UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MANUEL REYES-TORNERO, | Case No. 1:18-cv-00445-NONE-JDP |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO DENY THE PETITION FOR A WRIT OF HABEAS CORPUS AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY |
| v. | |
| M. ELIOT SPEARMAN, | |
| Respondent. | OBJECTIONS DUE WITHIN THIRTY DAYS |
| | ECF No. 1 |

Petitioner Jose Manuel Reyes-Tornero, a state prisoner with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. He claims that he was denied effective assistance of trial counsel in violation of the Sixth Amendment. *Id*. at 19-34.[1] Because petitioner has failed to meet the demanding standard for showing ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668 (1984), we recommend that the court deny the petition and decline to issue a certificate of appealability.

---

[1] While petitioner alleges other rights-violations in passing, *see* ECF No. 1 at 5, he makes arguments for (and agrees that he has exhausted) only two ineffective assistance claims, *see id*. at 8.

1

## I. Background

Petitioner pleaded not guilty to one count of attempted murder, four counts of felony assault, and four counts of robbery—all arising from an incident in which petitioner allegedly shot one man and robbed four at a card game. After an initial mistrial and a second trial, petitioner was sentenced to prison for an indeterminate term of 60 years to life, and a determinate term of 10 years. *See* ECF No. 1 at 1-2.

We set forth below some facts of the underlying offenses, as summarized by the California Court of Appeal. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> For years leading up to December 4, 2010, Nazario Hernandez had hosted games at his home about three times a week.
>
> **Events of December 4, 2010**
>
> One of these card games took place outside Nazario's trailer on December 4, 2010. In attendance at the outdoor card game were Jose Ramos, Efren Cisneros, Ignacio Martinez, and Nazario Hernandez. Other individuals were playing another card game inside the trailer.
>
> *Efren's Account*
>
> Around 8:00 or 8:30 p.m., Efren first noticed a man about three or four feet from the card table. Nazario was walking towards his trailer when the man "asked" for his money. Nazario thought the man was "playing" and "didn't pay any attention."
>
> Then, the man came to where Efren was playing cards with Jose and Ignacio. The man had a gun and was covering his "head" with his sweatshirt. The man fired a warning shot at the ground, then threatened Jose and Ignacio with the gun by "put[ting] it behind them or on their head." The man told them, in Spanish, that he wanted their money. There was about $250 or $300 from the card game on the table. Jose and Ignacio said they would give him the money, but refused to give him their wallets.
>
> The man then came towards Efren and pointed the gun at him. Efren also told the man that he could have the money but not his wallet. The man shot Efren below his right eye, next to his nose. Efren "guess[ed] he got frustrated from what I was saying so then I turned around and that is when I was shot…." Efren then got up and tried to grab the man. During the short struggle, the man's face became uncovered and Efren got a good look at him. The man then shot Efren three more times. Efren saw the man take the money that had been on the table and left. Efren then drove himself to the hospital.

2

At trial, Efren identified defendant as the shooter.

Lodged Doc. No. 2 at 3-4.

**II.   Discussion**

*General Federal Habeas Legal Standards*

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). We must defer to that decision, and cannot grant habeas relief for any claim that was adjudicated on the merits in the state proceeding unless it was contrary to clearly established federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1).

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id*. at 103 (citation omitted). Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 102-03 (emphasis added).

*Petitioner's Ineffective Assistance of Counsel Claims*

Petitioner claims that his trial counsel was constitutionally ineffective in violation of the Sixth Amendment. ECF No. 1 at 19, 27. Specifically, he claims that his attorney fell short of constitutional minimums by failing to seek redaction of a police interview and, relatedly, by failing to object to the prosecution's reliance on petitioner's failure to seek out the sheriff to

3

1  proclaim his innocence. *Id*. Petitioner's first claim was denied in a reasoned opinion by the
2  California Court of Appeal, *see* Lodged Doc. No. 2, while petitioner's second claim was raised in
3  his habeas petition to the California Supreme Court and denied without comment, see Lodged
4  Doc. Nos. 5, 6.

5  The two-step inquiry from *Strickland v. Washington* guides our analysis. *See* 466 U.S.
6  668 (1984). To succeed on an ineffective assistance of counsel claim, *Strickland* requires that a
7  petitioner first show a deficient performance so serious that it "fell below an objective standard of
8  reasonableness." *Id* at 687-88. Second, the petitioner must show that the deficient performance
9  caused prejudice, which requires "showing that counsel's errors were so serious as to deprive [the
10  petitioner] of a fair trial." *Id*. To succeed at this second step, petitioner must show that a
11  reasonable probability exists that the outcome of the trial would have been different, but for
12  counsel's errors. *See Richter*, 562 U.S. at 104. The *Strickland* standard is highly deferential and,
13  when placed against the backdrop of 28 U.S.C. § 2254, it is "doubly" so: it requires deference
14  both to the counsel's tactical decisions *and* the state court's evaluation of those decisions. *See*
15  *Richter*, 562 U.S. at 105. Thus, when the state court has decided an ineffective assistance of
16  counsel issue on the merits, our question is "whether there is any reasonable argument that
17  counsel satisfied *Strickland*'s deferential standard." *Id.*

18  Petitioner's arguments do not clear these high bars. Petitioner's first claim is that his trial
19  counsel should have sought the redaction of dialogue from his police interrogation—specifically,
20  portions in which officers asked petitioner why he did not affirmatively contact the police to
21  proclaim his innocence after he learned that he was a rumored suspect.[2] But there are many
22  legitimate tactical reasons why counsel would not move for such a redaction, and the California
23  Court of Appeal—when it considered the merits of this issue—offered one: "Defense counsel
24  could have reasonably wanted to have the jury learn that [petitioner] had repeatedly denied

---

[2] For example, one officer asked: "On Saturday he gets shot, on Sunday you learn, uh, that he is in the hospital, you learn that people are blaming you . . . . Why didn't you pick up the phone and say hey, I want to clear my name, people are blaming me[?]" Lodged Doc. No. 2 at 15. Petitioner suggests that four total questions of this sort should have been redacted. *See* ECF No. 1 at 20-21.

involvement in an interrogation setting," and "in order to get [petitioner's] interrogation responses into evidence, the detectives' surrounding comments and questions would also need to be admitted." Lodged Doc. No. 2 at 17. Indeed, even if some redactions were possible, it would have been tactically reasonable for defense counsel to think that a jury may find an unedited transcript (in which petitioner repeatedly proclaims his innocence) more forceful or persuasive than a redacted one. Trial counsel's failure to move for redaction did not fall below the standard of objective reasonableness, and it was reasonable and lawful for the California courts to reject petitioner's claim that it did.[3]

Petitioner's second claim—that trial counsel was ineffective by failing to object to one of the prosecution's closing arguments that drew attention to petitioner's pre-arrest silence[4]—is closely related. Relying on *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), petitioner argues that the prosecution's arguments were unconstitutional commentary on a defendant's silence, in violation of the Due Process Clause. But the reliance on *Doyle* is misplaced: *Doyle* concerned the admissibility of a defendant's silence at the time of arrest, *after* he had received a *Miranda* warning. *See* 426 U.S. at 617. By contrast, the Ninth Circuit has held that the "use of pre-arrest, pre-*Miranda* silence as substantive evidence of guilt" is constitutional. *United States v. Oplinger*, 150 F.3d 1061, 1066 (9th Cir. 1998), *overruled on unrelated grounds in United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (en banc); *see Jenkins v. Anderson*, 447 U.S. 231, 241 (1980) (Stevens, J., concurring) ("The fact that a citizen has a constitutional right to remain silent when he is questioned has no bearing on the probative significance of his silence before he has any contact with the police."); *United States v. Nasseri*, 17 F. App'x 618, 621 (9th Cir. 2001)

---

[3] And, even if a failure to move for redaction were objectively unreasonable, petitioner has not shown prejudice: the failure to remove four questions from a sprawling interview transcript running many dozens of pages did not create a reasonable probability of a different outcome. *See Richter*, 562 U.S. at 104.

[4] For example, at closing argument the prosecutor argued that petitioner had a "[s]trange reaction to hearing that people think [he] shot someone"—as evidenced by the fact that "[h]e [said] nothing to the sheriff's office, nothing to the people at the mobile home, nothing to Sheryl." Lodged Doc. No. 11 at 3059. During rebuttal, the prosecutor said, "[h]ow could someone who heard . . . that they are being blamed for shooting someone on a particular day not know where they were?" *Id*. at 3111. There appear to be four such statements to which petitioner objects. *See* ECF No. 1 at 28-29.

5

("[T]he prosecution may comment on a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt."); *Tran v. Baughman*, No. 2:17-CV-1925-JAM-KJN, 2020 WL 636465, at *9 (E.D. Cal. Feb. 11, 2020) ("Generally speaking . . . prosecutors are allowed to comment on a defendant's pre-arrest silence.").

Here, the prosecution's statements are best interpreted as constitutionally acceptable comments on the probative significance of petitioner's pre-arrest silence—and certainly a far cry from the kind of "egregious misstatements" to which an effective defense counsel *must* object. *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir.1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."). Because the prosecution's comments did not violate Due Process, counsel's failure to object to them did not fall below the standard of objectives reasonableness.[5] It was not unreasonable or contrary to federal law for the California courts to deny relief on this claim.

**III.   Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v.*

---

[5] Even if the prosecutor's statements were egregiously unlawful, petitioner would still have failed to show that these comments created prejudice—as the small number of statements in question concern only a small portion of the prosecution's closing statement and rebuttal.

*McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, we recommend that the court not issue a certificate of appealability.

### IV.  Findings and Recommendations

The court should deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability. These findings and recommendations are submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days of the service of the findings and recommendations, petitioner may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:  \_\_\_May 26, 2020\_\_\_                              _____
                                                                        UNITED STATES MAGISTRATE JUDGE

No. 205.

7